*In re* JORGE LUIS LANDING y JOSÉ AULET.

*Número:* O-73-355 *Resuelto:* 13 de abril de 1978

*Miriam Naveira de Rodón, Procuradora General, Peter Ortiz, Procurador General Interino, Candita R. Orlandi, Adolfo J. Vilá, Ronaldo Rodríguez Ossorio, Procuradores Generales Auxiliares,* abogados de El Pueblo; *Enrique González,* abogado de Jorge Luis Landing; *Luis Muñoz Rivera,* abogado de José Aulet.

PER CURIAM: Contra los abogados notarios José Aulet y Jorge Luis Landing el Procurador General de Puerto Rico presentó querella(1) de desaforo alegando los siguientes cargos:

PRIMERO: "Allá para el año 1970, los querellados observaron una conducta ilegal, inmoral e impropia como abogados y notarios al presentarse ante supuestos electores de Puerto Rico, personalmente y/o a través de otros con los que había un común acuerdo a ese respecto, con el plan de llevar a cabo una encuesta o un censo, cuando en realidad el fin que perseguían era inscribir un partido político logrando de hecho la inscripción fraudulenta del mismo a través de esas falsas representaciones."

SEGUNDO: "Allá para el año 1970 los querellados observaron una conducta ilegal, inmoral e impropia como abogados y notarios al no abrir y mantener un registro especial de todas las declaraciones juradas que recibían de alegados electores de Puerto Rico con relación a la inscripción de un partido político en incumplimiento de la Sección 112(b) [*sic*] de la Ley Electoral (16 L.P.R.A. 112)."

En adición formuló trece (13) y cuarenta y seis (46)

---

(1) Enmendada con posterioridad mediante autorización de este Tribunal.

cargos individuales respectivamente contra Aulet y Landing imputándoles "conducta ilegal, inmoral e impropia en abierta violación de la fe notarial como abogado y notario" consistentes en notarizar un sinnúmero de declaraciones sobre peticiones de inscripción de un partido político sin haber los electores comparecido ante ellos a jurar las mismas.

En sus contestaciones, con referencia al primer cargo, ambos aceptaron únicamente haber participado ". . . en el proceso de inscripción del Partido Auténtico Soberanista [P.A.S.] y que el querellado Jorge Luis Landing fue quien asumió la responsabilidad máxima en dicho proceso . . .", circunscribiéndose la participación del Lcdo. Aulet ". . . a prestar sus servicios como Notario"; en torno al segundo cargo, aceptaron que "el único registro que llena[ron] . . . fue el formulario preparado por el Sr. Enrique Alvarez Vicente, Oficial de la Junta Estatal de Elecciones"; y en cuanto a los cargos restantes reconocieron ". . . que no cumplieron estrictamente con las obligaciones que les impon[ía] a ellos como notarios la Ley Notarial y la Ley Electoral." Levantaron como defensa la observancia cabal de los principios éticos que regulan la profesión desde que fueron admitidos en 23 de septiembre de 1954.

En dicha etapa de los procedimientos, este Tribunal expidió una orden para que los querellados mostraran causa por la cual no debieran ser separados permanentemente como abogados. A la luz de la comparecencia, acordamos remitir el caso al Comisionado Especial para la continuación de procedimientos plenarios.

Previo los trámites de rigor, el Comisionado Especial Hon. César Bobonis Díaz rindió el Informe, sobre el cual los querellados han sometido sus objeciones y observaciones. Es a la luz de dicho Informe y los planteamientos de los querellados que se impone la solución del caso.

Discutiremos inicialmente los cargos primero y segundo que imputan a ambos querellados una "conspiración" para inscribir fraudulentamente un partido político y la inobservancia de abrir y mantener un registro especial de todas las declaraciones juradas de peticiones de inscripciones. Sobre el particular, el Informe consigna las siguientes determinaciones de hechos:

### PRIMER CARGO

"Pasadas las elecciones celebradas en Puerto Rico, en el año 1968, se creó el Partido Auténtico Soberanista. El grupo original que creó este partido estaba compuesto por el Lcdo. Jorge Luis Landing, los señores Antonio Hoyos Alvarado, Herminio Avilés, Ramón Fuentes Alicea, Rafael Hernández Ripol, Lcdo. Francisco Colón Gordiani y otros.

La inscripción de este partido se inició en el pueblo de Ceiba, llevándose a los peticionarios ante el Juez de Paz de dicho pueblo para juramentar sus peticiones.

Se extendió la inscripción del partido a San Juan, y fue entonces que se solicitó de la Junta Estatal de Elecciones, el nombramiento de Notarios para la juramentación de las Peticiones de Inscripción. Entre otros, se nombraron a los Lcdos. Jorge Luis Landing, José M. Rafucci, Francisco Colón Gordiani y José Aulet.

De los notarios nombrados, el Lcdo. Jorge Luis Landing, notarizó alrededor de 30,000 peticiones y el Lcdo. José Aulet alrededor de 8,000, todas peticiones para la inscripción del Partido Auténtico Soberanista.

El Lcdo. Jorge Luis Landing, era el Presidente del Partido Auténtico Soberanista, y como tal dirigía y era responsable de la inscripción del Partido.

El Lcdo. José Aulet, actuó como Notario para la inscripción del Partido durante el término de un año, cuando finalmente se afilió como miembro del Partido Auténtico Soberanista.

Al grupo original de las personas que fundaron el Partido Auténtico Soberanista, se unieron entre otros, los Sres. Arcadio Ortiz López y Miguel A. Bernacet Candelaria, quienes ayudaron activamente en el proceso de inscripción del Partido.

*Para conseguir personas que firmaran peticiones para la inscripción del Partido Auténtico Soberanista, se organizaron*

*grupos de 2 a 5 personas que se trasladaban a los distintos pueblos de la Isla, siempre acompañados por uno o más notarios. En ocasiones se hacía propaganda mediante altoparlantes y escritos, instando a la ciudadanía a que firmaran peticiones para la inscripción del Partido Auténtico Soberanista. Luego de esta propaganda, las personas que formaban los grupos visitaban a los residentes del área.* En otras ocasiones, sin la previa propaganda instando a la ciudadanía a que firmaran las peticiones de inscripción, las personas de los grupos que trabajaban en la inscripción, hacían su visita a los residentes del área.

Estas visitas a los residentes del área escogida, en ocasiones eran hechas por el Lcdo. Jorge Luis Landing o el Lcdo. José Aulet, quienes iban solo o acompañados por otra u otras personas. *Cuando uno de estos dos notarios eran los que hacían la visita, siempre le informaban a la persona visitada que se estaba inscribiendo el Partido Auténtico Soberanista; solicitaban su firma en una petición de inscripción; y de estar de acuerdo la persona procedía a firmar la petición en la presencia del notario visitante. El notario en presencia del peticionario o posteriormente notarizaba entonces la petición.*

Los Lcdos. Jorge Luis Landing y José Aulet *no utilizaron ningún procedimiento formal para tomar el juramento a los peticionarios,* por entender ambos que el público tenía conocimiento que al firmar la petición lo estaban haciendo bajo juramento.

En otras ocasiones las visitas en busca de personas que firmaran peticiones de inscripción eran hechas por miembros del grupo sin que estuvieran presentes en la casa visitada, los Lcdos. Jorge Luis Landing y/o José Aulet. Cuando esto ocurría y en ausencia de los notarios mencionados, los visitantes procedían en una de las formas siguientes:

1. Le informaban a la persona visitada que estaban inscribiendo el Partido Auténtico Soberanista; solicitaban que firmara una petición de inscripción y de consentir a ello firmaba la misma ante el visitante, que no era notario. *El visitante procedía entonces a entregar la petición al Lcdo. Jorge Luis Landing o al Lcdo. José Aulet, quienes notarizaban la petición dando fe falsamente de que el peticionario había comparecido y firmado la petición en su presencia.*

2. Le informaban a la persona visitada que estaban inscribiendo el Partido Auténtico Soberanista y solicitaban información para llenar la petición. Si la persona visitada se negaba a

firmar la petición, *el visitante se retiraba y procedía entonces a firmar la petición con el nombre del visitado y se ponían las huellas digitales de cualquier otra persona. Esta petición así firmada se entregaba al Lcdo. Landing o al Lcdo. Aulet, quienes procedían, cada uno en su caso a certificar como notarios y falsamente que la persona que aparecía como peticionario había comparecido, firmado y estampado sus huellas digitales ante el notario autorizante.*

3. Le informaban a la persona visitada que se estaba haciendo un censo o encuesta; solicitaban información y procedían a llenar una petición de inscripción del Partido Auténtico Soberanista. Si la persona la firmaba, la petición era entonces entregada a uno de los querellados, quien procedía a certificar como notario, falsamente que el que aparecía como peticionario había comparecido, firmado y estampado sus huellas digitales ante él.

4. Si la persona a quien se le informaba que se estaba celebrando un censo o encuesta se negaba a firmar el documento que se le presentaba, que en realidad era una petición para la inscripción del Partido Auténtico Soberanista, entonces el visitante seguía el procedimiento de firmar la petición con el nombre del visitado y hacía que alguna persona pusiera sus huellas digitales en la petición. Esta petición era entonces entregada al Lcdo. Landing o al Lcdo. Aulet, quienes procedían a certificar como notarios, cada uno en su caso, que el que aparecía como peticionario había comparecido, firmado y puesto sus huellas digitales en su presencia.

*Los querellados Lcdos. Jorge Luis Landing y José Aulet, no se pusieron de acuerdo entre sí, ni ninguno de ellos individualmente con otras personas para establecer un plan de informar a supuestos electores que se celebraba un censo o encuesta con el fin de poder inscribir ilegalmente el Partido Auténtico Soberanista, pero tengo mis serias dudas de que los Lcdos. Landing y José Aulet, y en especial el Lcdo. Landing, estuvieran en total desconocimiento de que esta práctica se estaba siguiendo por las personas que estaban colaborando en la inscripción del partido.*

El Partido Auténtico Soberanista, quedó finalmente inscrito y fue certificada su inscripción el 16 de febrero de 1971, después de haber radicado ante la Junta Estatal de Elecciones 48352 peticiones de candidatura en 59 de los precintos electorales de la Isla de Puerto Rico. (Ex. 5 de Qte.)

De las 48352 peticiones radicadas por el Partido Auténtico Soberanista, solo están disponibles para ser examinadas las peticiones de inscripción ofrecidas en evidencia en la vista de esta querella, porque el resto de las peticiones fueron destruidas o quemadas un año después de ser certificada la inscripción del Partido Auténtico Soberanista, cuando por órdenes del Hon. Ernesto Mieres Calimano, entonces Superintendente de Elecciones, se destruyeron o quemaron las peticiones de inscripción de los Partidos Unión Puertorriqueña, Partido Independentista Puertorriqueño y Partido Auténtico Soberanista.

Esta querella tuvo su origen en una queja levantada por los señores Arcadio Ortiz López y Miguel A. Bernacet Candelaria, primero ante el Superintendente de Elecciones y luego ante el Procurador General de Puerto Rico, después de haberse certificado la inscripción del Partido Auténtico Soberanista.

Motivaron la queja antes dicha, discrepancias surgidas entre los señores Arcadio Ortiz López y Miguel A. Bernacet y algunos de los principales directores de la agrupación política inscrita, *por razón de no haber recibido los señores Ortiz López y Bernacet, las prebendas que exigían por su participación en la inscripción del Partido Auténtico Soberanista.*

## SEGUNDO CARGO

Salvador Díaz Castro, era ayudante administrativo de la Junta Estatal de Elecciones, para los años de 1968 al 1969, y como tal intervenía en el proceso de inscripción de partidos nuevos.

Con relación a la inscripción del Partido Auténtico Soberanista, recibía de manos de los notarios, las peticiones de inscripción que notarizaban. En estas funciones estaba en contacto con los Lcdos. Jorge Luis Landing y José Aulet, quienes comparecían ante la Junta Estatal de Elecciones y radicaban las peticiones de inscripción que habían notarizado.

Estas peticiones, cuando se inició la inscripción del Partido Auténtico Soberanista, iban acompañadas de copia de un documento que preparó el Lcdo. Landing y que contenía la siguiente información:

'Peticiones de inscripción del Partido Auténtico Soberanista juramentadas ante el Notario Jorge Luis Landing, el día — de ——————— de ———, en el Pueblo de ———————————.'

En el documento se incluía el número de affidavit, fecha en que se notarizó, nombre del peticionario y el pueblo donde se firmó la petición.

El original de este documento lo conservaba el Lcdo. Landing, y procedía a encuadernar todos los que preparaba 'sujetándolos en un extremo, haciendo unos huecos en el margen izquierdo y se sujetaban con una carátula'. Se rotuló esta encuadernación como registro especial para la inscripción de partidos políticos.

Al recibir la Junta Estatal de Elecciones las peticiones de inscripción, el documento que contenía la lista de peticiones era desprendida y se utilizaba para el cotejo de las peticiones radicadas y luego se archivava [sic] en la Junta.

El señor Díaz Castro preguntó al Lcdo. Landing, porqué entregaba la copia y no el original de las listas conteniendo la relación de las peticiones de inscripción y el Lcdo. Landing contestó que los originales los quería para otros propósitos.

En una fecha posterior, la Junta Estatal de Elecciones, preparó un documento que tenía que llenarse y unirse a las peticiones de inscripción que se radicaban por los nuevos partidos políticos. (Ex. 4 del Qdo.)

Este documento en su encabezamiento decía: 'Relación de Peticiones de Inscripción de Nuevos Partidos'. Había que incluir en el mismo la siguiente información: Agrupación Política, fecha, nombre del precinto, número de affidavit, apellido paterno, apellido materno, nombre de pila, edad, dirección del elector al inscribirse y colegio donde votó.

Cuando el Lcdo. José Aulet empezó a juramentar peticiones de inscripción del Partido Auténtico Soberanista, ya se estaba utilizando el documento a que hago referencia en los dos párrafos anteriores.

El Sr. Salvador Díaz Castro, fue sustituido en las funciones que realizaba por el Sr. Enrique Alvarez Vicente, quien pasó a ocupar el cargo de ayudante especial del Superintendente de Elecciones.

El señor Alvarez Vicente, exigió tanto al Lcdo. Landing, como al Lcdo. Aulet, que tenían que entregar a la Junta Estatal de Elecciones, los originales de las listas que preparaban y que unían a las peticiones de inscripción radicadas. Aunque con alguna renuencia, así lo hicieron los Lcdos. Landing y Aulet.

El Lcdo. Landing entregó los originales de los documentos que él había preparado conteniendo la lista de peticiones notarizadas por él y el Lcdo. Aulet entregó los originales del documento que preparó la Junta Estatal de Elecciones, conteniendo la lista de las peticiones notarizadas por él.

Desde este momento los Lcdos. Landing y Aulet, cada vez que radicaban peticiones de inscripción del Partido Auténtico Soberanista, llenaban el formulario (Ex. 4 del Qdo.) y el original lo entregaban unido a la petición. No conservaban copia de este documento ni tenían en su oficina notarial constancia alguna de que hubiesen abierto y mantenían un registro especial de las declaraciones juradas con relación a la inscripción de un partido político.

*Ni el señor Díaz Castro, ni el señor Alvarez Vicente informaron o dieron a entender a los Lcdos. Landing y Aulet, que con las listas que ellos entregaban en la Junta Estatal de Elecciones, se iba a hacer el registro especial de affidavits que contemplaba la Ley Electoral.*

El 7 de julio de 1972, el Fiscal General Especial, Nuncio Fratallone Di Gangi, citó a los Lcdos. Landing y Aulet, para que comparecieran ante él, el día 10 de julio de 1972, llevando consigo cada uno de ellos, el registro especial de todas las declaraciones juradas que recibieran como notarios públicos en relación con las peticiones de inscripción del Partido Auténtico Soberanista radicadas en la Junta Estatal de Elecciones. (E. Ex. 1 del Qte. y Ex. 2 del Qte.)

En su comparecencia ante el Fiscal Nuncio Fratallone, ninguno de los dos notarios querellados, pudieron entregar el Registro Especial que contempla la Sección 37 de la Ley Electoral, porque no lo tenían. Alegaron que lo ya antes dicho de que entregaban a la Junta Estatal de Elecciones un original y cuatro copias de un formulario (Ex. 4 de los Qdos.) debidamente lleno y que el original se conservaba allí para que cualquier persona pudiese informarse sobre las peticiones de inscripción radicadas. (Ex. 1 y Ex. 2 de los Qdos.)

Cuando el Fiscal Nuncio Fratallone, citó a los Lcdos. Jorge Luis Landing y José Aulet, éstos hicieron múltiples gestiones ante funcionarios de la Junta Estatal de Elecciones para que se les devolviesen los originales de los documentos que unían a las peticiones de inscripción que radicaban, pero no obtuvieron los mismos porque para esa fecha ya el entonces Superintendente de

Elecciones, Hon. Ernesto Mieres Calimano, había ordenado la destrucción o quema de las peticiones de inscripción de los Partidos Unión Puertorriqueña, Partido Independentista Puertorriqueño y Partido Auténtico Soberanista y con ellas fueron destruidos los documentos que solicitaban los Lcdos. Jorge Luis Landing y José Aulet." (Bastardillas nuestras.)

## I

Con relación al primer cargo de "conspiración", el Informe del Comisionado Especial exonera a los querellados al concluir que éstos ". . . no se pusieron de acuerdo entre sí ni ninguno de ellos individualmente con otras personas, para establecer un plan de informar a supuestos electores que se celebraba un censo o encuesta, con el fin de inscribir ilegalmente el Partido Auténtico Soberanista."

No obstante, hemos de dirigir nuestra atención a la seria duda que el Comisionado manifiesta tener de que los querellados, en particular Landing, no desconociera totalmente la práctica de obtener información bajo la pretensión engañosa de censo o encuesta seguida por algunas personas que colaboraban en la inscripción.

Este aspecto está basado en lo declarado por el testigo Arcadio Ortiz, quien al atestar aceptó que el movil de la querella surgió por no haber recibido las *prebendas* o beneficios que exigía.

Respecto al Lcdo. Aulet, la duda sobre este extremo debe resolverse a su favor por las siguientes razones: (1) el testigo Ortiz no lo relacionó en su declaración; (2) todos los cargos específicos en su contra se circunscribieron a un solo día y sitio—7 de diciembre de 1969 en el residencial público Vega Sánchez del Municipio de Vega Alta—habiendo el Comisionado concluido que Aulet estuvo allí ese día y tomó juramentos; (3) la prueba estableció que en el área se realizó una propaganda clara, abierta y ruidosa en favor de la inscripción del PAS, lo que razonablemente descarta intención de engaño o fraude; (4) y la actuación de Aulet se limitó al

ejercicio del notariado, recayendo y aceptándose que la responsabilidad y la dirección de la inscripción correspondió al Lcdo. Landing.

Ahora bien, la participación y dirección máxima en el proceso de inscripción por el Lcdo. Landing—y el alto número de inscripciones que autenticó (alrededor de 30,000)— nos mueve a concluir que independientemente de que poseyera o no conocimiento real de la forma en que sus colaboradores estaban logrando la inscripción del partido, su actuación de falsamente dar fe notarial en varias peticiones de inscripción falsificadas propició dicha práctica y no puede escapar las consecuencias disciplinarias que ello conlleva.

## II

■ Relativo al segundo cargo, ambos querellados admiten que el único registro que llenaron fue el formulario preparado por un oficial de la Junta Estatal de Elecciones. En consecuencia no abrieron ni mantuvieron el registro especial de las declaraciones juradas por ellos autenticadas en el proceso de inscripción conforme ordenaba la Sec. 37 de la Ley Electoral entonces vigente (16 L.P.R.A. sec. 112). Aun aceptada la dudosa tesis que se nos propone de que el haber cumplimentado los formularios preparados por la Junta constituyó un cumplimiento sustancial de la Ley, ciertamente ello no justificaría la exoneración que se nos pide.

## III

■ Finalmente, con referencia a los restantes cargos, el análisis del Informe de la manera más beneficiosa a la luz de las objeciones y comentarios de los querellados— (véase Apéndice)—demuestra indubitadamente que por lo menos el Lcdo. Aulet dio fe notarial falsa de haberse suscrito ante él ocho (8) peticiones de inscripción entre las cuales se falsificaron en una la firma y en tres las huellas dactilares de los supuestos electores; y el Lcdo. Landing quince (15) cargos

que en esencia establecen que actuó contrario a la fe notarial al hacer constar falsamente que un número sustancial de electores había suscrito o signado—e imprimido las huellas dactilares—ante él, las peticiones juradas de inscripción del PAS.

 La gravedad de las actuaciones de los querellados no puede subestimarse ni reducirse a simples transgresiones técnicas, sin importancia, de la Ley Notarial. La esencia de la función notarial es dar fe—por conocimiento directo personal o a través del testigo de conocimiento del otorgante—de la identidad de las personas que han comparecido a suscribir un juramento. La omisión en descargar fiel y adecuadamente las responsabilidades de dicha función, constituyó el medio para que personas poco escrupulosas y animadas por fines lucrativos, falsificaran las firmas y huellas dactilares de un sinnúmero de ciudadanos y viabilizaran peticiones fraudulentas de inscripción para un partido político.

En virtud de lo expuesto—luego de tomar en cuenta el previo historial limpio durante dos décadas en la profesión—*procede se dicte Sentencia imponiendo a los querellados, como medidas disciplinarias, la separación permanente del ejercicio de la notaría; la suspensión de la abogacía al Lcdo. José Aulet por el término de seis (6) meses más $500.00 de sanción económica disciplinaria; y la suspensión de la abogacía al Lcdo. Jorge Luis Landing por el término de dos (2) años, más la suma de $1,500.00 como sanción económica disciplinaria.*

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Rigau e Irizarry Yunqué no intervinieron.

*APENDICE*

QUERELLADO AULET

| Núm. | Tipo de Violación Notarial | Determinación de Informe | Conclusión de este Tribunal |
|---|---|---|---|
| 3 | Dar fe falsamente petición se firmó en su presencia | Ninguna | No probada |
| 4 y 52 | Dar fe falsamente petición se firmó en su presencia | Probadas (firmas falsificadas) | Probadas |
| 5 | Dar fe falsamente petición se firmó en su presencia | Exonerado | Exonerado |
| 6 | Dar fe falsamente petición se firmó en su presencia | Probada | Probada |
| 7 | Dar fe falsamente petición se firmó en su presencia | Probada | Probada |
| 8 | Dar fe falsamente petición se firmó en su presencia | Probada | Probada |
| 9 | Archivado por fallecimiento elector | Archivado | Archivado |
| 10 | Dar fe falsamente petición se firmó en su presencia | Probada | Probada |
| 11 | Dar fe falsamente petición se firmó en su presencia | Probada | No Probada |
| 12 | Dar fe falsamente petición se firmó en su presencia | No probada | No Probada |
| 39 | Dar fe falsamente peticionaria estampó huella en su presencia | Probada (Huellas falsificadas) | Probada |

| Núm. | Tipo de Violación Notarial | Determinación de Informe | Conclusión de este Tribunal |
|---|---|---|---|
| 40 | Dar fe falsamente peticionario estampó huellas en su presencia | Probada (Huellas falsificadas) | Probada |
| 50 | Dar fe falsamente peticionario estampó huellas en su presencia | Probada (Huellas falsificadas) | Probada |

## QUERELLADO LANDING

| Núm. | Tipo de Violación Notarial | Determinación de Informe | Conclusión de este Tribunal |
|---|---|---|---|
| 13 | Dar fe falsamente petición se firmó en su presencia | Exonerado | Exonerado |
| 14 | Dar fe falsamente petición se firmó en su presencia | Probada | Probada |
| 15 y 53 | Dar fe falsamente petición se firmó en su presencia | Probadas (Firma y huellas son falsas) | Probadas |
| 16 | Dar fe falsamente petición se firmó en su presencia | No probada | No probada |
| 17 y 42 | Dar fe falsamente petición se firmó en su presencia | No probado el 17, pero sí huellas falsas (42) | Exonerado 17 y sí el 42 |
| 18, 43 y 54 | Dar fe falsamente petición se firmó en su presencia | Archivado cargo 18 y probados 43 y 54 (firma y huellas falsificadas) | Archivado 18 y sí 43 y 54 |
| 19 y 55 | Dar fe falsamente petición se firmó en su presencia | Archivado 19 y sí probado el 55 (firma falsificada) | Archivado 19 y sí el 55 |

| *Núm.* | *Tipo de Violación Notarial* | *Determinación de Informe* | *Conclusión de este Tribunal* |
|---|---|---|---|
| 20 y 44 | Dar fe falsamente petición se firmó en su presencia | No probado el 20 y sí el 44 (huellas falsificadas) | No probado el 20 y sí el 44 |
| 21 | Dar fe falsamente petición se firmó en su presencia | Probado | No probado |
| 22 | Dar fe falsamente petición se firmó en su presencia | Probado | Probado |
| 23 | Dar fe falsamente petición se firmó en su presencia | No probado | No probado |
| 24, 45 y 56 | Dar fe falsamente petición se firmó en su presencia | Probados (firma y huellas falsificadas) | Probados |
| 25 | Dar fe falsamente petición se firmó en su presencia | Archivada por fallecimiento elector | Archivado |
| 26 | Dar fe falsamente petición se firmó en su presencia | Exonerado | Exonerado |
| 27 | Dar fe falsamente petición se firmó en su presencia | Probado | Probado |
| 28, 46 y 57 | Dar fe falsamente petición se firmó en su presencia | Archivado el 28 y probados 46 y 57 (firma y huellas falsificadas) | Archivado 28 y probados 46 y 57 |
| 29 | Dar fe falsamente petición se firmó en su presencia | Probado | No probado |

| Núm. | Tipo de Violación Notarial | Determinación de Informe | Conclusión de este Tribunal |
|---|---|---|---|
| 30 y 47 | Dar fe falsamente petición se firmó en su presencia | Archivado 30 y probado el 47 (huellas falsificadas) | Archivado 30 y probado el 47 |
| 31 | Dar fe falsamente petición se firmó en su presencia | Probado | Probado |
| 32, 48 y 58 | Dar fe falsamente petición se firmó en su presencia | Probados (Firma y huellas falsificadas) | Probados |
| 33 y 59 | Dar fe falsamente petición se firmó en su presencia | Probados (Firmas falsificadas) | Probados |
| 34 y 49 | Dar fe falsamente petición se firmó en su presencia - | Probados (huellas falsificadas) | Probados |
| 35, 51 y 61 | Dar fe falsamente petición se firmó en su presencia | Probados (firma y huellas falsificadas) | Probados |
| 36 y 60 | Dar fe falsamente petición se firmó en su presencia | Probados (firma falsificada) | Probados |
| 37 y 50 | Dar fe falsamente petición se firmó en su presencia | Probados (firma y huellas falsificadas) | Probados |
| 38 | Dar fe falsamente petición se firmó en su presencia | Probado | Probado |
| 41 | Dar fe falsamente petición se firmó en su presencia | No se probó | No se probó |