*In re* SERGIO PEÑA CLOS.

*Número:* MC-88-57 *Resuelto:* 29 de marzo de 1994

*Norma Cotti Cruz, Subprocuradora General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La Oficina del Procurador General acudió ante este Tribunal, mediante Informe de 29 de agosto de 1988, en el cual nos indicó que en 1987, mientras se investigaba la conducta profesional de un abogado,[1] salieron a relucir hechos que, de ser ciertos, pudieran dar base a radicar una querella por conducta profesional contra el Lcdo. Sergio Peña Clos y el entonces Juez José Villares Rodríguez;[2] y

---

[1] Lcdo. Juan Ares Velázquez. El Procurador General, luego de investigar esta queja, archivó administrativamente la misma.

[2] El Procurador General, Lcdo. Rafael Ortiz Carrión, nos había solicitado previamente el 12 de junio de 1988, mediante comparecencia especial, que lo relevaran a él y a su oficina de esta investigación por entender que podía surgir, aunque en apariencia, un conflicto de intereses o de parcialidad por haber servido éste como

que, ante estas alegaciones, la Oficina del Procurador General había comenzado una investigación contra estos dos (2) miembros del foro.[3]

La investigación del Procurador General reveló que: el 31 de mayo de 1961, el Lcdo. Sergio Peña Clos presentó demanda de divorcio, por la causal de trato cruel, *en representación del Sr. Salvador Guzmán Toro contra la Sra. Nilda Iris Rivera* ante el Tribunal Superior, Sala de Caguas (Civil Núm. 61-1076). Este caso fue posteriormente trasladado a la Sala de San Juan, a solicitud de la demandada, mediante Orden de 21 de junio de 1961, en la que se le asignó un nuevo número (Civil Núm. 61-5521). *El 28 de febrero de 1963, mediante sentencia, este caso fue archivado por inactividad.*

El *29 de diciembre de 1961*, el licenciado Peña Clos presentó nuevamente demanda de divorcio, por la causal de abandono, *pero esta vez en representación de la Sra. Nilda Iris Rivera contra el Sr. Salvador Guzmán Toro* ante el Tribunal Superior, Sala de Caguas (Civil Núm. 61-2910), la cual fue contestada ese mismo día por el demandado Guzmán Toro, quien compareció, por derecho propio, allanándose éste a que se dictara sentencia. Ese mismo día, el entonces Juez José Villares Rodríguez señaló vista y dictó sentencia de divorcio. Del expediente del caso, no surge que se celebrara la "vista de conciliación", la cual es mandatoria cuando la causal de divorcio es "el abandono" y las partes han procreado hijos menores de edad en el

---

asesor del Presidente del Senado y de la Comisión de lo Jurídico del Senado a través del Bufete Ramírez y Ramírez, mientras el licenciado Peña Clos era Vicepresidente de este Cuerpo y miembro ex-oficio de esta Comisión. El 25 de junio de 1987 relevamos al Procurador General Ortiz Carrión de dicha investigación pero no así a la oficina que éste dirige. El 7 de julio de 1987, el Procurador General mediante moción solicitó reconsideración de lo acordado por este Tribunal el 25 de junio de 1987; mediante Resolución de 23 de julio de ese mismo año, declaramos no ha lugar a lo solicitado.

[3] Con relación al ex Juez Villares Rodríguez, el 4 de septiembre de 1990, y estando su caso ante nuestra consideración, recibimos una moción solicitando archivo del mismo, por el fallecimiento del ex Juez Villares Rodríguez. Mediante Resolución, de 11 de febrero de 1994, accedimos a lo solicitado.

matrimonio. Tampoco surge del expediente que se notificara de la sentencia emitida a la señora Rivera.

La investigación, además, señaló que ante el licenciado Peña Clos, en su capacidad de notario, se otorgaron las escrituras de compraventa Núms. 3 y 4 *de 26 y 28 de febrero de 1967*, respectivamente.([4]) En ambas comparecieron el Sr. Salvador Guzmán y la Sra. Nilda Iris Rivera, haciéndose constar en las mismas que eran casados entre sí, *cuando en realidad no lo eran.*

Surge del Informe del Procurador General que la Sra. Nilda Iris Rivera sostuvo que *nunca* había requerido los servicios del licenciado Peña Clos para que la representara en la segunda demanda de divorcio (Civil Núm. 61-2910), en la cual éste alegadamente la representó.([5]) Alegó, además, que nunca estuvo en el tribunal en dicho pleito, que nunca fue notificada del mismo y que nunca ha estado físicamente en un tribunal, como parte de un caso de divorcio antes de 1976.

Ante estas imputaciones, el licenciado Peña Clos —a requerimiento del Procurador General— respondió que era totalmente falso y carente de veracidad lo expresado por la señora Rivera a los efectos de que nunca requirió de éste sus servicios, de que jamás estuvo en el tribunal en dicho pleito, de que tampoco fue notificada de la sentencia emitida y de que nunca estuvo físicamente en un tribunal en un caso de divorcio antes de 1976.([6]) Alegó el licenciado Peña Clos, en adición, que radicó el segundo caso de divorcio a petición de la señora Rivera; que ésta se lo solicitó *como abogado amigo y conocedor del trasfondo conyugal* e

---

([4]) En la Escritura Núm. 3, alegadamente el señor Guzmán y la señora Rivera vendieron una casa en Villa Carolina; mediante la Escritura Núm. 4 se adquiría una propiedad en Country Club, Río Piedras. En la última escritura alegadamente no compareció la señora Rivera.

([5]) A la señora Rivera se le tomaron declaraciones juradas los días 12 de agosto y 9 de diciembre de 1987.

([6]) Surge del expediente que el Procurador General se comunicó mediante carta con el licenciado Peña Clos como parte de su investigación los días 13 de agosto y 1ro y 3 de septiembre de 1987.

informó que aceptó la encomienda con la intención de "tratar de propiciar el que dos personas amigas pudieran reflexionar, por separado, sobre su propias y particulares vidas". Informe, pág. 6.([7]) Con relación a las Escrituras Núms. 3 y 4, antes mencionadas, en la que el señor Guzmán y la señora Rivera figuran como casados, cuando no lo estaban, alegó que "eso fue lo que me informaron dichos comparecientes en ocasión de personarse ante m[í] para la otorgación de las referidas escrituras"; expresa que no obstante el procedimiento de divorcio en el que intervino, no tenía motivos para dudar de la palabra y afirmación de éstos, años después del referido divorcio. (Énfasis suprimido.) Informe, pág. 7. Él asumió que éstos se habían casado nuevamente, máxime·cuando los veía juntos con mucha frecuencia.

Por su parte, el ex Juez Villares Rodríguez, Q.E.P.D., declaró que en el caso de divorcio ante él, compareció la demandada, señora Rivera, a la vista de conciliación y a la de divorcio. Añadió que ésto podía ser verificado en los autos del caso. Sostuvo, además, que él conocía personalmente al señor Guzmán y a la señora Rivera por administrar éstos un negocio en los bajos del tribunal. Tanto la versión del licenciado Peña Clos, como la del ex Juez Villares Rodríguez *fueron confirmadas* por el señor Guzmán Toro.([8]) Ante estos hechos y luego de determinar que existían *contradicciones insalvables* entre las versiones ofrecidas, el Procurador General concluyó:

... en el descargo de nuestra responsabilidad no podemos soslayar el hecho, a la luz de las declaraciones juradas prestadas a esta oficina por la Sra. Nilda Iris Rivera, *de ser estas ciertas*, que el licenciado Sergio Peña Clos habría incurrido en conducta reñida con los cánones de ética de la profesión legal, concreta-

---

([7]) En particular, en cuanto a la señora Rivera, el licenciado Peña Clos alega que conocía personalmente a ésta, entre otras cosas, por haber ella trabajado en una cafetería que para aquella época existía en el primer piso del Centro Judicial de Caguas.

([8]) El señor Guzmán prestó declaración jurada el 7 de abril de 1988.

mente en su preámbulo y en los cánones 21, 35 y 38. Así mismo, es imperativo destacar que el licenciado Sergio Peña Clos habría incurrido en infracciones a la Fé Pública al otorgar unas escrituras allá para el 26 y el 28 de febrero, haciendo constar que para esa fecha el Sr. Salvador Guzmán Toro y la Sra. Nilda Iris Rivera estaban casados. (Énfasis suplido.) Informe, pág. 9.

El 27 de octubre de 1988, luego de analizar el informe de la Oficina del Procurador General y los documentos acompañados como anejos, *este Tribunal determinó que hacía falta ampliar la investigación*, por lo que se remitió nuevamente el asunto a la Oficina del Procurador General; le instruimos que:

... deberá, entre otras cosas, tomar declaraciones juradas al taquígrafo y demás funcionarios del tribunal de instancia que estuvieron presentes o intervinieron en la vista del caso de divorcio 61-2910 o cualquier incidente relacionado con el mismo; examinar los documentos oficiales del tribunal donde obran constancias sobre dicha vista; investigar todo lo relacionado con el hecho de si Doña Nilda Rivera trabajaba o asistía a menudo, para la época en que ocurrieron los hechos, a la cafetería que existía en el primer piso del edificio que albergaba el tribunal; investigar con personas que conocían a Doña Nilda Rivera y al señor Salvador Guzmán sobre si a éstos se consideraban entre sus amistades como casados para la época en cuestión; *y auscultar cualquier otra cosa que pudiera arrojar luz sobre este asunto y sobre la veracidad de las declaraciones juradas claramente contradictorias que forman parte del expediente investigativo.* (Énfasis suplido.) Resolución de 27 de octubre de 1988.

El 3 de enero de 1990, el Procurador General acudió ante este Tribunal informando que se habían examinado las copias de los documentos del Caso Núm. CS-61-2910, *Nilda Iris Rivera v. Salvador Guzmán Toro*; y que del mismo se desprendía que la demanda de divorcio, fue presentada, contestada y resuelta, todo en el transcurso del día 29 de diciembre de 1961. Señaló además:

Habida cuenta de que, el caso en cuestión se remonta a hace ya casi treinta años; y añadido el hecho de que de haberse celebrado la vista, esta no ha debido llamar la atención, por

cuanto trataríase de una acción de divorcio sin más particularidades, *estimamos que sería bastante difícil encontrar algún funcionario del tribunal que recordara las particularidades del caso de autos.*[9] (Énfasis suplido.) Moción informativa, pág. 2.

## I

En cuanto a la alegación de la señora Rivera —a los efectos de que ella nunca autorizó al licenciado Peña Clos a representarla, como abogado, en la segunda demanda de divorcio que éste radicara ante la Sala de Caguas del Tribunal Superior de Puerto Rico, acción de divorcio que se celebró ante el Juez Villares Rodríguez, y de que ella nunca compareció ante dicho tribunal en relación con esa acción— *cabe señalar que la prueba que pudo recopilar la Oficina del Procurador General fue una sumamente confusa y contradictoria.* Ello fue precisamente la razón para que este Tribunal ordenara una ampliación de la investigación de la queja, la cual investigación posterior *no* rindió fruto alguno. Tenemos, *de un lado,* la versión del licenciado Peña Clos, la cual fue totalmente confirmada por el Juez Villares Rodríguez y el señor Salvador Guzmán, *y por otro lado,* la versión de la señora Rivera. Ante esta situación, y en vista de la imposibilidad de corroborar, mediante

---

[9] En relación con la investigación, el informe expresa:

"En consonancia a lo anterior visitamos el Centro Judicial de Caguas. Allí entrevistamos a la Sra. Ramonita Cotto, funcionaria que a partir del año 1964 se desempeñaba como Secretaria de Sala del Ex-Juez José Villares.

"La señora Cotto no pudo arrojar luz sobre los incidentes del caso de autos que datan de 1961, es decir unos años antes de ella trabajar en la Sala del Ex-Juez Villares.

"Además, nuestra investigación arrojó que el Sr. Plinio Alfaro quien fue Secretario de Sala del Ex-Juez Villares allá para 1961 falleció hace cinco (5) años. Que el Sr. Luis Canetti quien se desempeñó para la misma época, como taquígrafo de sala también falleció. Que el Sr. Oscar Muñiz quien fungía como alguacil en la misma sala también falleció.

"Luego entrevistamos en nuestra oficina al Sr. José Fernández Torres, a la sazón director ejecutivo del Centro Judicial de Caguas. Este funcionario nos informó que comenzó a trabajar en el Tribunal Superior, Sala de Caguas, allá para el 18 de noviembre de 1960, no pudo arrojar luz sobre las particularidades del caso de autos. Además, informó no conocer a la Sra. Nilda Rivera." Moción informativa, págs. 1–2.

prueba documental fehaciente, alguna de dichas dos versiones completamente opuestas, somos del criterio que sería estéril ordenar la radicación de una querella formal, con la celebración de vista ante un comisionado y el correspondiente informe al Tribunal.

*Ahora bien*, de los hechos narrados podemos inferir, *como cierto e incuestionable,* el hecho de que el licenciado Peña Clos representó a la señora Nilda Iris Rivera en un caso de divorcio contra el Sr. Salvador Guzmán, cuando anteriormente, y en relación con una demanda de divorcio entre las mismas partes que fue archivada por inactividad, representó al señor Guzmán. Surge como hecho cierto y probado, además, que el licenciado Peña Clos otorgó dos (2) escrituras como notario en la que dio fe del hecho que éstos —señor Guzmán y la señora Rivera— estaban casados, cuando la realidad era que *no* lo estaban; hechos que contravienen los Cánones 21 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([10]) Veamos.

El Canon 21, ante, en su segundo y tercer párrafo, dispone:

> *No es propio de un profesional el representar intereses encontrados.* Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. *Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueben.* Será alta-

---

([10]) Aunque los hechos alegados fueron incurridos antes de aprobarse los actuales cánones del Código de Ética Profesional, de 24 de diciembre de 1970, los principios de ellos enunciados eran ya en síntesis contenidos en los anteriores cánones de ética profesional. Véase *Cánones de Ética Profesional que regirán la conducta de los abogados de Puerto Rico,* 48 D.P.R. X (1935).

mente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste. (Énfasis suplido.)[11]

Nos encontramos en el caso de autos, con un *problema ético de representación sucesiva* en cual el licenciado Peña Clos representó a la señora Rivera, cuando previamente había comparecido como abogado del señor Guzmán en una demanda de divorcio anteriormente radicada. Véase *In re Orlando Roura*, 119 D.P.R. 1 (1987). Al ser los dos (2) casos sobre la misma materia, divorcio, y entre las mismas partes, el licenciado Peña Clos tenía, o debió tener conocimiento, de las confidencias de ambas partes en relación a este asunto, exponiendo a uno de ellos —en este caso al señor Guzmán— a perjudicarse por la anterior relación profesional con este abogado.

▪ Ante una situación muy parecida, en *In re Orlando Roura*, ante, pág. 6, expresamos que el peligro de *la representación sucesiva* es que "[e]l principio de confidencialidad se ve conculcado de admitirse tal representación, aun concluida la relación profesional". Véanse: *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984); *In re Guzmán*, 80 D.P.R. 713 (1958). En *In re Carreras Rovira y Suárez Zayas*, ante, pág. 789, expresamos además que: "[el Canon 21 de Ética aspira a] prevenir cualquier tipo de dilución a la fidelidad que debe [un abogado] a su cliente."

▪ La acción del licenciado Peña Clos contraviene, además, *aunque sea en apariencia*, lo dispuesto por el Código de Ética Profesional, en lo referente a que "[l]a relación de abogado y cliente debe fundamentarse en la absoluta confianza. ... todo miembro del foro legal le debe a sus clientes ... la más devota lealtad y la más completa honradez". *Deberes del abogado para con sus clientes, Criterio general*, Código de Ética Profesional, 4 L.P.R.A. Ap. IX. En casos donde se representan clientes en asuntos que

---

[11] A iguales efectos véase Canon 6 del Código de Ética Profesional de 1935, el cual estaba vigente al momento de los hechos.

puedan afectar adversamente cualquier interés de otro cliente anterior, el abogado no puede aducir como justificación para evadir el conflicto que no habrá de utilizar las confidencias o secretos de un cliente en perjuicio de éste, pues el abogado "debe evitar hasta la apariencia de conducta profesional impropia". Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Véase *In re Concepción Suárez*, 111 D.P.R. 486 (1981).

La conducta del licenciado Peña Clos, al radicar la segunda demanda de divorcio en representación de la señora Rivera el 29 de diciembre de 1961 contravino, además, el Canon 35 del Código de Ética Profesional, ante, el cual dispone que:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar affidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable.([12])

La conducta de todo abogado ante los tribunales debe ser una caracterizada por sinceridad y honradez y, ciertamente, no actúa profesionalmente el abogado que no se ajusta a la sinceridad de los hechos al presentar las causas. Véase *In re González*, 92 D.P.R. 544 (1965). En el caso de autos, el licenciado Peña Clos presentó la segunda demanda de divorcio (61-2910) siete (7) meses después de

---

([12]) Véase Canon 22 del Código de Ética Profesional de 1935, el cual estaba vigente al momento de los hechos.

radicarse la primera (61-1076). Surge del informe que el Caso Núm. 61-1076 *fue desestimado por inactividad en febrero de 1963*, es decir, cuando se radicó la segunda demanda de divorcio, el primer caso todavía estaba pendiente de resolverse. En ambos casos, el licenciado Peña Clos era abogado de una de las partes, por lo que éste debía tener conocimiento de tal situación; su acción indujo al tribunal a error, constituyendo ésta una conducta impropia y contraria al citado Canon 35. *In re González*, ante.

■ En *In re Sánchez Rodríguez*, 123 D.P.R. 876 (1989), expresamos que los abogados deben desempeñar su función con el mayor grado de competencia, responsabilidad e integridad; la buena marcha del proceso judicial del País es responsabilidad ineludible de todo miembro de la profesión legal. Era deber del licenciado Peña Clos informar al Tribunal Superior de Puerto Rico, Sala de Caguas, de la radicación del anterior caso de divorcio, el cual todavía estaba pendiente de resolución.

II

Tenemos, en adición, el hecho de que el licenciado Peña Clos consignó en dos (2) escrituras, que otorgó como notario, que el señor Guzmán y la señora Rivera estaban casados entre sí, *cuando en realidad no lo estaban*. Ello, naturalmente, constituye conducta impropia al amparo de las disposiciones del citado Canon 35 y de la Ley Notarial de Puerto Rico vigente al momento de los hechos.[13]

---

[13] La referida Sec. 16 de la Ley Notarial de 1957 (4 L.P.R.A. sec. 1016 (ed. 1965)) —vigente al momento de los hechos— reza como a continuación:

"*Sec. 1016. Identidad de las partes*

"Los notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos. *También darán fe acerca de la edad, estado, profesión y vecindad de los otorgantes*, con relación al dicho de los mismos, y en caso de que fuera casada la persona que aparezca como adquirente del derecho que es objeto del contrato, se expresará el nombre y apellido del cónyuge que no comparezca al otorgamiento. En casos graves y extraordinarios en que no sea posible consignar por completo estas circunstancias, expresa-

 Reiteradamente este Tribunal ha expresado *que el notario es el custodio de la fe pública*; ésta, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental. *In re González González*, 119 D.P.R. 496 (1987). Faltar a la veracidad de los hechos es una de las faltas más graves que puede cometer un notario, ya que la certificación de un hecho falso constituye un acto detrimental de la fe pública. *In re Landing; y Aulet*, 107 D.P.R. 103 (1978); *In re Cruz Tollinche*, 105 D.P.R. 500 (1976); P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988.

 Es deber del notario que autoriza el otorgamiento de una escritura hacer las averiguaciones mínimas que requieren las normas más elementales de la profesión. *In re Del Río Rivera y Otero Fernández*, 118 D.P.R. 339 (1987). En *In re Cruz Disdier*, 70 D.P.R. 453, 455–457 (1949), resolvimos que son actos de negligencia crasa en el ejercicio de la profesión de abogado redactar escrituras haciendo constar que la compradora y la vendedora eran solteras cuando el notario conocía que eran casadas.

Como anteriormente expresáramos, alega el licenciado Peña Clos que los comparecientes *le informaron* que estaban casados. Somos del criterio que el licenciado Peña Clos tenía el deber de indagar más sobre el estado civil de los comparecientes, ya que debió tener duda sobre la veracidad de lo alegadamente expresado por los comparecientes; ello en vista del hecho de que él los había divorciado seis (6) años antes.

---

rán cuanto sobre ello les conste de propia ciencia y manifiesten los testigos. El testigo o testigos de conocimiento, deberán ser, en todo caso, personas bien conocidas del notario, y éste deberá dar fe de ello en el documento. En tales casos graves y extraordinarios en que a un notario le sea imposible dar fe del conocimiento de los otorgantes, ni puedan éstos presentar un testigo o testigos de conocimiento, lo expresará así, designando los documentos que le presentaren como prueba de su nombre, estado y vecindad, y refiriendo además el motivo del caso grave o extraordinario." (Énfasis suplido.)

## III

En resumen, somos del criterio que el licenciado Peña Clos definitivamente no actuó conforme a lo preceptuado por los Cánones 21 y 35 del Código de Ética Profesional, ante. Ello, de ordinario, conlleva la imposición de severas sanciones al abogado y notario que así actúa. Ahora bien, en vista de que los hechos del caso de epígrafe fueron cometidos hace aproximadamente treinta (30) años cuando eran escasos los precedentes jurisprudenciales relativos a los planteamientos éticos aquí envueltos —no teniendo dicho abogado, por ende, el beneficio de nuestros pronunciamientos al efecto y guías precisas prospectivas, *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986)— y en vista del hecho de que no ha quedado demostrado que persona alguna resultara perjudicada por la actuación del abogado ni que éste se lucrara de manera especial por la misma, *entendemos procedente únicamente, como sanción, censurar al licenciado Peña Clos por su actuación.* Confiamos, y esperamos, que esta experiencia le ayude a mantener en el futuro una conducta profesional dentro de los límites de la pulcritud que se espera de los abogados que practican la misma; apercibiéndolo de que en el futuro deberá dar fiel cumplimiento a los postulados que emanan de los cánones de ética profesional que rigen la profesión de abogado.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Fuster Berlingeri no intervino.