*In re* JORGE A. VERA VÉLEZ, querellado.

*Número:* CP-92-458        *Resuelto:* 6 de junio de 1994

*Anabelle Rodríguez, Procuradora General, Carlos Lugo Fiol, Procurador General Interino, Reina Colón de Rodríguez, Subprocuradora General, e Yvonne Casanova Pelosi, Procuradora General Auxiliar*, abogados de El Pueblo; *Luciano Sánchez Martínez*, abogado del querellado; *Abner Limardo, Comisionado Especial*.

PER CURIAM:

I

Mediante Resolución de 26 de marzo de 1992 ordenamos a la Procuradora General que realizara una investigación sobre la actuación del Lcdo. Jorge A. Vera Vélez, respecto a una escritura otorgada por él, que dio lugar a los hechos objeto de nuestra opinión en el caso *Pérez Mercado v. Martínez Rondón*, 130 D.P.R. 134 (1992). En dicha escritura compareció uno de los otorgantes como soltero, cuando en realidad estaba casado.

El 3 de junio de 1992 la Procuradora General nos presentó un informe en el cual recomendaba la presentación de una querella contra el licenciado Vera Vélez por violación a la fe pública notarial y al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Mediante Resolución de 19 de junio ordenamos a la Procuradora General que

procediera con la presentación de los cargos correspondientes.

El 10 de agosto de 1992 la Procuradora General presentó la querella en la cual imputó al licenciado Vera Vélez los cargos siguientes:

### PRIMER CARGO

El Lcdo. Jorge A. Vera Vélez incurrió en conducta impropia contraria a la fe pública notarial establecida en el Art. 26 de la Ley Notarial Vigente, Ley Núm[.] 75 del 2 de julio de 1987.

### SEGUNDO CARGO

El Lcdo. Jorge A. Vera Vélez incurrió en violación del Canon 35 del Código de Etica Profesional, el cual entre otras cosas, dispone que el abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar causas.

El 25 de septiembre de 1992 designamos al ex Juez Superior Abner Limardo Sánchez como Comisionado Especial para que oyera y recibiera la prueba presentada por las partes en apoyo de sus respectivas posiciones y nos rindiera un informe de sus determinaciones de hecho respecto a dicha prueba.

Luego de celebrar una vista el 2 de noviembre de 1993, el Comisionado Especial nos presentó su informe. Éste refleja, en síntesis, que el 20 de mayo de 1988 el Lcdo. Jorge A. Vera Vélez otorgó la Escritura Núm. 112, mediante la cual la Sra. Rosa María Martínez le vendió al Sr. Luis Díaz Ríos una finca ubicada en el Barrio Carrizales de Hatillo; que en dicha escritura compareció el señor Díaz Ríos como soltero a pesar de estar casado con la Sra. Marta V. Díaz Figueroa; que esto se debió a la información ofrecida por el señor Díaz Ríos al querellado, y que el querellado confió en la declaración hecha por el otorgante respecto a su estado

civil porque entendió en aquel momento que no tenía motivo alguno para cuestionar su veracidad.(¹)

El 9 de noviembre de 1993 el Procurador General Interino presentó una moción para hacer constar su conformidad con las determinaciones de hecho formuladas por el Comisionado Especial.

## II

Reiteradamente hemos resuelto que un notario que falta a la veracidad de los hechos incurre en una de las faltas más graves que pueda cometer un notario debido a que la certificación de un hecho falso constituye un acto detrimental a la fe pública. *In re Peña Clos*, 135 D.P.R. 590 (1994), y casos allí citados. Por lo tanto, hacer constar que un otorgante es soltero cuando la realidad es que está casado viola la fe pública notarial. Íd. Es por ello que, de ordinario, se le exige al notario que autoriza el otorgamiento de una escritura que haga unas averiguaciones mínimas, cónsonas con las normas más elementales de la profesión, y que en. aquellas ocasiones en que tenga duda sobre lo expresado por el otorgante respecto a su *status* civil indague más allá de lo requerido comúnmente. Íd.

En el caso ante nos, los esposos Díaz-Ríos alegaron que el licenciado Vera Vélez debió haber sabido que ellos estaban casados porque seis (6) meses antes, el 18 de noviembre de 1987, habían otorgado la Escritura Núm. 228 ante el querellado y que en dicha ocasión habían comparecido ambos cónyuges como casados. Además, el señor Díaz Ríos negó haberle informado al querellado que fuese soltero. Alegó que, contrario a la versión del querellado, le había informado antes de otorgar la escritura que estaba casado

---

(¹) Surge de la prueba que durante el mes anterior, el 13 de abril de 1988, el licenciado Vera Vélez había otorgado otra escritura de compraventa en la cual el señor Díaz Ríos, como comprador, comparecía como soltero. Dicha escritura no está incluida en la investigación que tenemos ante nos.

y que su esposa podría comparecer en la tarde a otorgar la escritura. Esta versión de los hechos no le mereció credibilidad al Comisionado Especial,[2] quien determinó que al momento del otorgamiento de la Escritura Núm. 112 el querellado no se acordaba de haber otorgado la Escritura Núm. 228, debido a que ésta había sido otorgada seis (6) meses antes, y que por haber sido ésta una transacción sencilla, resultaba ser de poca trascendencia entre los 260 documentos públicos autorizados por el querellado durante 1987. El Comisionado Especial determinó, además, que el querellado fue en efecto conducido a error por el señor Díaz, quien no solamente le informó que era soltero, sino que además se reiteró en esta información al momento del querellado hacer la lectura de dicha escritura. También determinó que el señor Díaz actuó con entero conocimiento de su esposa, quien posteriormente otorgó otra escritura ratificando ésta.

Luego de examinar la prueba, somos del criterio que el licenciado Vera Vélez no actuó conforme a los preceptos del Art. 76 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2126, y del Canon 35 del Código de Ética Profesional, *supra*, aunque no hubiese actuado a sabiendas de que la información recibida era falsa. El hecho de que el señor Díaz le hubiese mentido al querellado en cuanto a su *status* civil es un factor a considerar al momento de determinar la sanción disciplinaria adecuada pero, de ordinario, no exime al notario de llevar a cabo las indagaciones debidas en casos como el que está ahora ante nos, en el cual una parte que va a otorgar una escritura ante un notario comparece como soltero, cuando anteriormente había comparecido ante el mismo notario como casado. Nuestra jurisprudencia clara-

---

[2] Según surge de su informe, el Comisionado Especial consideró que el testimonio de los esposos Díaz-Díaz no era confiable por estar afectado por el interés personal de dichos testigos en otra demanda presentada por ellos contra el querellado ante el Tribunal Superior, en la cual reclaman daños ocasionados por la tardanza del querellado en presentar la Escritura Núm. 112 para su inscripción en el Registro de la Propiedad.

mente requiere mayor cuidado de parte de los notarios en casos como el de marras en que, aun cuando el notario haya actuado sin tener conocimiento de que certificaba como verdadero un hecho falso, *lo debió haber sabido*. En *In re Peña Clos*, supra, tuvimos la oportunidad de examinar unos hechos similares. En aquella ocasión se investigó la actuación de un notario que consignó en dos (2) escrituras en las cuales comparecía una pareja como casada, cuando en realidad ya no lo estaba, y había sido el propio notario querellado quien había sido su abogado durante su proceso de divorcio seis (6) años antes. En el caso ahora ante nos ciertamente existía el mismo deber de indagar, especialmente cuando el querellado había autorizado una escritura en la que comparecían los otorgantes como casados, apenas seis (6) meses antes de autorizar la escritura en la que aparece uno de ellos como soltero. La veracidad de los hechos en el caso de marras era de fácil verificación, pues la escritura previamente otorgada por el querellado, que estaba bajo su propia custodia, tenía la información correcta sobre el *status* civil del querellante.

## III

En resumen, el licenciado Vera Vélez cometió la falta imputada por no hacer las investigaciones de rigor. Ello, de ordinario, conlleva la imposición de severas sanciones al notario que así actúe. Ahora bien, en vista de que el querellado, durante los 34 años que ha ejercido la abogacía y la notaría en el área de Arecibo ha gozado de buena reputación entre la comunidad legal de dicha área, de que no ha quedado demostrado que persona alguna resultara perjudicada por su actuación[3] ni que se lucrara de manera es-

---

[3] La comparecencia del señor Díaz como soltero no perjudicó a la señora Figueroa ya que, como ella misma admitió ante el Comisionado Especial, el señor Díaz actuó con su autorización. En nuestra opinión en el caso *Pérez Mercado v. Martínez Rondón*, 130 D.P.R. 134 (1992), resolvimos que dicha escritura no era nula por razón

pecial por la misma, y avalado por el hecho de que el Procurador General Interino está conforme con las determinaciones formuladas por el Comisionado Especial, procede que limitemos la sanción únicamente a *censurar* al Lcdo. Jorge A. Vera Vélez por su actuación y le apercibamos de que en el futuro deberá dar fiel cumplimiento a los deberes impuestos por nuestra ley a los notarios como funcionarios de la fe pública y a los postulados que emanan de los cánones de ética profesional que rigen la profesión de abogado.

*Se dictará sentencia en conformidad.*

El Juez Asociado Señor Rebollo López concurrió sin opinión escrita. El Juez Asociado Señor Negrón García disintió e impondría una suspensión del ejercicio de la notaría por un término no menor de tres (3) meses. El Juez Asociado Señor Hernández Denton disintió sin opinión escrita.

---

de no haber comparecido el señor Díaz con su esposa, sino anulable sólo a instancia de la señora Díaz Figueroa. Resolvimos, además, en aquella ocasión que nada de lo dispuesto en nuestra opinión impediría a la señora Díaz Figueroa otorgar la correspondiente escritura pública a los efectos de ratificar la compra hecha por su esposo. Íd. De hecho, para la fecha de la vista ante el Comisionado Especial, la señora Díaz Figueroa ya había ratificado la escritura objeto de esta querella.

Por otro lado, la demanda de los esposos Díaz–Díaz en contra del querellado es por aquellos daños que puedan haber sufrido de la alegada tardanza del querellado en presentar la escritura para inscripción. Dichas alegaciones no guardan relación alguna con la comparecencia del señor Díaz como soltero, máxime cuando dicha comparecencia ha sido ratificada por su esposa.