EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Orlando R. González Hernández | 2014 TSPR 11 190 DPR ____ |

Número del Caso: CP-2012-5

Fecha: 28 de enero de 2014

Abogado de la Parte Querellada:

        Por derecho propio

Oficina del Procurador General:

        Lcdo. Salvador Antonetti Stuts
        Procurador General

        Lcda. Mariana Vargas
        Subprocuradora General

        Lcda. Minnie H. Rodríguez López
        Procuradora General Auxiliar

Materia: Conducta Profesional – Amonestación por no esforzarse en evitar la apariencia de conducta impropia al ejercer sus funciones como notario.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:                                    CP-2012-0005

Orlando R. González Hernández

PER CURIAM

En San Juan, Puerto Rico, a  28 de enero de 2014.

Los hechos que originan el presente proceso disciplinario se remontan al año 1999 cuando el Sr. Vinicio Medrano Díaz (señor Medrano) presentó una queja contra el Lcdo. Orlando R. González Hernández (el querellado). Eventualmente, se presentó una querella contra este en la que se le imputó infringir los Cánones 21, 35 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX. Por considerar que la conducta del licenciado González Hernández violentó los preceptos del Canon 38, supra, se le amonesta y apercibe que en el futuro cumpla a cabalidad con los cánones de ética que rigen la profesión del abogado. A continuación, pasamos a exponer los hechos relevantes al asunto que nos ocupa.

I

El querellado fue admitido al ejercicio de la abogacía y la notaría el 22 de mayo de 1979. Surge del expediente, que el 21 de mayo de 1989 el señor Medrano contrajo matrimonio con la Sra. Jeannette Alicea Linares bajo el régimen de la sociedad legal de gananciales.[1] Tiempo después, el 5 de febrero de 1991, el querellado autorizó la Escritura de Compraventa Núm. 16 en la que el señor Medrano (parte compradora) compareció como soltero a pesar de que en realidad estaba casado.[2] Según explicaremos más adelante, el querellado alegó que dicha falsedad le era desconocida. Posteriormente, en abril de ese mismo año, los esposos Medrano-Alicea se divorciaron por consentimiento mutuo y el licenciado González Hernández fue quien los representó en esa gestión.[3] Transcendió que luego del divorcio[4], el 30 de agosto de 1991, el letrado autorizó la Escritura de Compraventa Núm. 111 en la que el señor Medrano vendió la propiedad que había adquirido mediante la Escritura de Compraventa Núm. 16.[5]

Años después, el 29 de diciembre de 1999, el señor Medrano presentó ante esta Curia una queja contra el abogado. Alegó que este faltó a sus deberes éticos al consignar en la Escritura Núm. 16 que él (el quejoso) era

---

[1] Véase, Informe del Comisionado Especial, Determinación de Hecho Núm. 11, pág. 4.
[2] Véase, Contestación a la querella, Anejo Núm. I.
[3] Véase, Petición de divorcio por consentimiento mutuo, Íd., Anejo Núm. II.
[4] El entonces Tribunal Superior, Sala de Bayamón, emitió sentencia de divorcio el 19 de abril de 1991, en el caso RF-1991-322.
[5] Véase, Escritura Número 111, Contestación a la querella, Anejo Núm. V.

soltero cuando sabía que en realidad era casado. Sostuvo que el letrado tenía conocimiento de ello debido a una relación de negocios que tenían. También, indicó que en las estipulaciones que se sometieron con la petición de divorcio no se mencionó la propiedad objeto de esa transacción, que según alegó, era ganancial.

Entre julio de 2001 y abril de 2002 la Directora de la Oficina de Inspección de Notarías (ODIN) nos presentó dos informes.[6] Eventualmente, el 24 de mayo de 2002 emitimos una resolución ordenando la paralización de los procedimientos disciplinarios hasta que se adjudicara una reclamación incoada en el Tribunal de Primera Instancia, Sala de Carolina, que estaba relacionada a los hechos alegados en la queja. Luego de los trámites de rigor[7], la Directora de ODIN sometió un tercer informe el 11 de diciembre de 2003. En este se expresó en torno a varias quejas que el señor Medrano había presentado contra el querellado.[8] En cuanto a lo que nos ocupa, recomendó que refiriéramos al Procurador General lo relacionado a la dación de fe del estado civil del quejoso y a la intervención del licenciado González Hernández en el proceso de divorcio por consentimiento mutuo, ello, ante una posible representación de clientes con intereses adversos.

---

[6] Véase, <u>Moción en cumplimiento de Orden</u> de 10 de abril de 2002.
[7] El 14 de marzo de 2003 le ordenamos a la Directora de ODIN que se expresara en torno a varios escritos que habían radicado las partes.
[8] Dichas quejas no están ante nuestra consideración y sobre las mismas la Directora de ODIN recomendó sus archivos.

Ante ello, el 13 de febrero de 2004 referimos la queja a la Oficina del Procurador General y el 27 de mayo de 2005 recibimos su informe. En este, se recomendó el archivo de la queja por resultar carente de fundamentos las imputaciones del quejoso.[9] El señor Medrano se opuso a ese informe y en consecuencia, el 17 de febrero de 2006 referimos el asunto nuevamente a la Oficina del Procurador General para que ampliara la investigación.

Luego de estos eventos surgieron varias órdenes que crearon confusión sobre el trámite de este proceso disciplinario.[10] Una vez clarificado el asunto, el 7 de julio de 2011 la Procuradora presentó el informe requerido.[11] Examinado el mismo, el 28 de octubre de ese año le ordenamos a la Procuradora General que presentara la querella correspondiente, la cual recibimos el 19 de marzo del pasado año 2012.

En síntesis, se formularon tres cargos contra el licenciado González Hernández.  En cuanto a los Cargos I y

---

[9] Véase, <u>Informe del Procurador General de 2005</u>, Apéndice de la querella, Anejo VI.

[10] El 5 de mayo de 2006 emitimos una resolución archivando la presente queja.  Sin embargo, por error involuntario el 26 de julio de 2006 le ordenamos al Procurador General que emitiera su informe. Tras atender un escrito en cumplimiento de resolución presentada por la Oficina del Procurador General, el 6 de octubre de 2006 emitimos otra resolución dejando sin efecto el archivo de la queja toda vez que el quejoso había comparecido a exponer su reacción en torno al informe previamente presentado por la Oficina del Procurador General.

[11] En ese informe la Procuradora sostuvo que no existía prueba objetiva que sustentara el hecho de que el licenciado conociera el estatus civil del quejoso para cuando autorizó la Escritura Núm. 16.  Señaló que el notario querellado no dio fe de la veracidad del estado civil del otorgante, sino que en ese aspecto el notario afirmó conocer sus circunstancias personales por sus dichos.  En cuanto al posible conflicto de intereses, indicó que el licenciado González debió tener sospechas sobre los acuerdos que se llevaron a cabo entre los esposos Medrano-Alicea en el divorcio. Esto, tras advenir en conocimiento durante ese trámite de que el quejoso estaba casado para la fecha en que se otorgó la Escritura Núm. 16 de Compraventa.

II, la querella expone que el letrado violó los Cánones 35 y 38, supra, al fungir como notario en la Escritura Núm. 111, que como mencionamos, se autorizó luego del divorcio del quejoso. De otra parte, se le imputó infringir el Canon 21, supra, por representar a los exesposos Medrano-Alicea en la petición de divorcio por consentimiento mutuo.

Examinada la querella y la contestación a la misma, el 4 de octubre de 2012 designamos como Comisionado Especial al Hon. Carlos Dávila Vélez, ex juez del Tribunal de Primera Instancia, para que recibiera la prueba que tuvieran a bien presentar las partes y nos rindiera un informe. No obstante, ni la Procuradora ni el querellado presentaron prueba testifical, por lo que el caso quedó sometido por el expediente.[12] El 17 de abril de este año el Comisionado rindió su informe y concluyó que el querellado cometió las faltas imputadas.

Luego de exponer el trasfondo fáctico y procesal que precede, enmarquemos esta controversia dentro del Derecho aplicable.

II

Como sabemos, el Código de Ética Profesional recoge las normas mínimas de conducta que rigen a los miembros de la profesión legal con el propósito de que estos

---

[12] A la conferencia celebrada el 1 de noviembre de 2012 comparecieron la Procuradora General Auxiliar y el querellado. La Procuradora expresó que no presentaría testigos y que sometería el caso por los expedientes CP-2012-5 y AB-1999-154. El Comisionado especial le concedió 15 días al querellado para que informara si prestaría testimonio. Al no presentar escrito alguno al respecto, ni haber comparecido a una subsecuente vista que se calendarizó, se dio por sometido el caso por los expedientes.

desplieguen un comportamiento ejemplar en el desempeño de su labor. *In re* García Aguirre, 175 D.P.R. 433, 439 (2009).

En su parte pertinente, el Canon 21, supra, de ese cuerpo de normas establece que:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
>
> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

Este Canon le impone a los togados un deber de lealtad completa que se puede agrupar en dos aspectos. Primero, que todo abogado debe ejercer un criterio profesional independiente y no influenciado por sus propios intereses. *In re* Pérez Marrero, 185 D.P.R. 449, 457 (2012); *In re* García Aguirre, supra; Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850, 857 (1995). Segundo, que no debe

divulgar los secretos y las confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes. Íd. En ese contexto, hemos enfatizado que el conflicto de intereses proscrito por esa disposición presenta tres situaciones distintas que todo letrado debe evitar. Veamos.

Es altamente conocido que un abogado debe abstenerse de aceptar una representación legal, o continuar en ella, cuando sus intereses personales puedan afectar su juicio profesional. In re Pérez Marrero, supra, pág. 457; In re Rivera Vicente, 172 D.P.R. 349, 359 (2007); In re Morell, Alcover, 158 D.P.R. 791 (2003). En estas situaciones no existe una relación dual abogado-cliente, sino que los intereses propios del abogado -personales, familiares, económicos u otros- entran en conflicto con los de su representado. S. Steidel Figueroa, Ética y la responsabilidad disciplinaria del abogado, Estados Unidos, Pubs. J.T.S., 2010, pág. 134. Esto podría ocurrir, por ejemplo, cuando un abogado no realiza determinada acción que pueda redundar en beneficio de su cliente ante la excusa de que ello frustraría sus expectativas personales en un caso particular. In re Pérez Marrero, supra, pág. 457; Liquilux Gas Corp. v. Berríos, Zaragoza, supra, pág. 858. En otras palabras, la representación legal provista debe estar "libre de ataduras personales". In re Pizarro Colón, 151 D.P.R. 94, 116 (2000).

Por otra parte, el Canon 21, _supra_, también prohíbe la representación sucesiva o simultánea adversa. Esto es, que un abogado represente a un cliente en una controversia que esté sustancialmente relacionada a la de otro cliente, actual o anterior, si los intereses de ambos son adversos. In re Pérez Marrero, supra, pág. 857-858; Liquilux Gas Corp. v. Berríos, Zaragoza, supra, pág. 859. Véase además, Robles Sanabria, _Ex parte_, 133 D.P.R. 739 (1993). Esa relación sustancial requerida no es una mera coincidencia entre los sujetos o la temática involucrada, sino que supone "algún grado de coincidencia entre la _información pertinente_ entre las controversias involucradas en los asuntos". (Énfasis en el original) Steidel Figueroa, op. cit., pág. 136. Véanse también, In re Pérez Marrero, supra, pág. 458; _In re_ Báez Genoval, 175 D.P.R. 28 (2008). Por lo que no tiene que tratarse de asuntos idénticos. _In re_ Sepúlveda Girón, 155 D.P.R. 345, 356 (2001).

Para que se configure una representación sucesiva adversa es necesario que exista una relación abogado-cliente previa. _In re_, Baez Genoval, supra, pág. 36. En esta modalidad se prohíbe que un abogado represente a un cliente en un asunto que esté sustancialmente relacionado con otro asunto en el que haya representado a un cliente anterior, si como ya mencionamos, esa representación del segundo cliente resulta adversa a la del primero. Íd. En otras palabras, un primer cliente está en una posición de desventaja frente a un segundo cliente, quedando así en una

situación de vulnerabilidad. Steidel Figueroa, op. cit., pág. 134. El Profesor Steidel nos explica que esta vulnerabilidad se debe a que se presume que el abogado advino en conocimiento de secretos o confidencias del primer cliente, lo que redundaría en beneficio del segundo, y por ende, en detrimento del primero. Íd. Esta prohibición aspira a garantizar que las confidencias que el cliente anterior le brindó al abogado no se usen en su contra en representaciones posteriores. Robles Sanabria, Ex parte, supra, págs. 746-747.

De otra parte, el cuadro que se presenta cuando un letrado representa a una persona cuyos intereses en un caso actual podrían ser conflictivos con los de otro cliente actual se denomina representación simultánea adversa. En este tipo de conflicto ético es que se enmarcan las alegaciones referentes al Canon 21, supra, que se formularon contra el licenciado González Hernández. El Profesor Steidel Figueroa describe estas situaciones de la siguiente manera:

> [e]l escenario más claro lo constituiría la situación en que un abogado representa tanto a una parte demandante como a una parte demandada o codemandada. Ahora bien, esta situación expuesta aquí de la forma más cruda, suele revestirse de diverso ropaje, menos evidente, pero con una situación conflictiva similar, y por tanto, éticamente cuestionable. Steidel Figueroa, op. cit., pág. 133.

Esta Curia ha sido enfática en que todo abogado debe evitar que en beneficio de un cliente se abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones

actuales con otro cliente, abogando así por causas contrarias. *In re* Rivera Vicente, supra, pág. 359; *In re* Sepúlveda Girón, supra, pág. 355.   En este tipo de situación, en beneficio de un cliente, "el letrado necesariamente tiene que defender aquello a lo cual debe oponerse en cumplimiento de sus obligaciones hacia otro cliente". Íd.   Por lo tanto, para que dicha prohibición se active es imperativo que exista una relación abogado-cliente dual. In re Báez Genoval, supra, pág. 36. Con esto se intenta preservar la autonomía del juicio del abogado y prevenir que se diluya la fidelidad que un abogado  le debe a su cliente. Íd. Por esa razón, ante una situación como esta, el abogado no puede exponer como justificación para salvar el conflicto de interés que no utilizará las confidencias de un cliente en perjuicio de su otro cliente. Íd. De manera que  ante un potencial o actual conflicto de intereses, es preciso que el abogado renuncie a ambas representaciones. Íd.   Esa prohibición es "insoslayable, por lo que los clientes no podrán consentir a la representación conflictiva". Íd., pág. 37.

Ahora bien, en *In re* Avilés, Tosado, 157 D.P.R. 867, 891 (2002), mencionamos que el conflicto de intereses aludido en el Canon 21, supra, no puede plantearse ante el ejercicio de la función notarial.[13] Esto debido a que como ya mencionamos, es necesario que para que opere esa norma ética existan intereses encontrados entre clientes

---

[13] Citando a S. Torres Peralta, El Derecho Notarial Puertorriqueño, ed. especial, San Juan, Pubs, S.T.P. Inc., 1995., Cap. IV, pág. 4.55.

concurrentes o sucesivos o entre el cliente y el abogado. Véase también, In re Pérez Rodríguez, 172 D.P.R. 665, 671 (2007). Como sabemos, el notario es el "testigo silente" de las controversias legales relacionadas al contenido e interpretación de los instrumentos públicos que otorga. In re Colón Ramery, 133 D.P.R. 555, 568 (1993). Por lo tanto, no representa a ninguna de las partes otorgantes, sino que es asesor y guía de todas y depositario de la fe pública. El precitado caso In re Avilés, Tosado, supra, es un ejemplo de esto que hemos mencionado.

En el mencionado caso el licenciado Tosado Arocho le adelantó $30,000 a la señora Martínez, copropietaria de un inmueble que él interesaba comprar. Luego, ese mismo abogado autorizó una escritura que puso fin a la comunidad de bienes existente entre ella y su excónyuge, el otro copropietario del inmueble. En ese instrumento se consignó que la señora Martínez le entregó a su exesposo $30,000 como pago por su participación en esa propiedad. Ante esos hechos, se le imputó al licenciado Tosado Arocho, entre otras faltas notariales, infringir el Canon 21, supra, por autorizar la mencionada escritura y entrar en conflicto entre sus intereses personales y los de su clienta. Concluimos que en esa situación no se había configurado una relación abogado-cliente entre el querellado Tosado y la señora Martínez, cobijada por la prohibición del Canon 21, supra. Allí también se le imputó a otro abogado —el licenciado Avilés Cordero— infringir ese mismo Canon.

Dicho letrado representó al licenciado Tosado Arocho en una vista relacionada al desalojo del inmueble. Finalmente, fue el licenciado Avilés Cordero quien autorizó la escritura que puso fin a la disputa. En ese instrumento público compareció su representado, el licenciado Tosado Arocho, y la señora Martínez. Ante ese escenario, resolvimos que la actuación del licenciado Avilés Cordero no constituyó una violación al Canon 21, supra, ya que en su función notarial no fue abogado de la señora Martínez, por lo que no se configuró una situación de intereses encontrados entre dos clientes.[14]

De otra parte, el Canon 35, supra, postula que "[e]l abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas". La importancia de la notaría en nuestro ordenamiento jurídico ha sido reiterada por años, pues el notario ejerce una función clave al ser custodio de la fe pública. In re López Sánchez, 168 D.P.R. 173, 179 (2006). Es por ello que la notaría requiere cuidado y debe ejercerse con dedicado esmero y celo profesional. In re Belén Trujillo, supra, pág. 801; In re Vera Vélez, 148 D.P.R. 1,6 (1999); In re Rivera Arvelo y Ortíz Velázquez, 132 D.P.R. 840, 862 (1993).

Cuando un notario autoriza un documento, da fe y asegura que este: cumple con todas las formalidades de ley

---

[14] En este caso se encontró al licenciado Tosado Arocho incurso en violación al Art. 5 de la Ley Notarial de Puerto Rico y al Canon 38 del Código de Ética Profesional.

y forma;  es legal y verdadero; y que se trata de una transacción válida y legítima. In re Belén Trujillo, supra, pág. 801. Véanse además, In re Torres Alicea, 175 D.P.R. 456, 460 (2008); In re López Sánchez, supra, pág. 179; In re Avilés, Tosado, 157 D.P.R. 867, 889 (2002); In re Rivera Arvelo y Ortíz Velázquez, supra, pág. 863. Es esta presunción de legalidad, veracidad y legitimidad lo que le brinda certeza, garantía y eficacia al documento notarial. In re Belén Trujillo, supra, pág. 801; In re Rivera Aponte, 169 D.P.R. 738, 742 (2006). Por tal motivo, se requiere que el notario observe la mayor pureza y honestidad en el descargo de sus funciones. Dijimos en In re Martínez, Odell II, 148 D.P.R. 636, 642 (1999), que "[m]ás que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin la misma, no podría la profesión jurídica justificar su existencia". (Énfasis suprimido). En vista de lo anterior, al autorizar una escritura pública, el notario tiene cuatro deberes principales. En primer lugar, debe indagar la voluntad de los otorgantes y formular esa voluntad indagada. Así también, es preciso que investigue ciertos hechos y datos de los que depende la eficacia o validez del negocio.  Por último, debe darle a los otorgantes la información necesaria para que comprendan el sentido, los efectos, los riesgos y las consecuencias de la celebración del negocio. In re Belén Trujillo, supra, pág. 803.

Es evidente que el notario no es un simple observador del negocio jurídico que se realiza ante él. In re Avilés, Tosado, supra, pág. 889. Su función, por ser pública, trasciende la de un autómata legalizador de firmas. Id, pág. 889. Faltar a la veracidad de los hechos es, por lo tanto, una de las faltas más graves que como custodio de dicha fe puede cometer un notario. Íd., pág. 890. De hecho, para determinar que un notario ha incurrido en esa falta no es necesario que lo haya hecho intencionalmente. In re Rivera Arvelo y Ortíz Velázquez, supra, pág. 863. Basta con que sea el resultado de una labor carente de celo y de cautela. Por eso hace varios años describimos que "su función 'es faena de tiempo y paciente integración de todos los elementos documentales…'". In re Del Rio Rivera y Otero Fernández, 118 D.P.R. 339, 346 (1987). Debido a la gran responsabilidad que recae sobre un notario es que hemos pautado que el notario que autoriza el otorgamiento de una escritura debe hacer las **averiguaciones mínimas** que requieren las normas más elementales de la profesión. In re Vera Vélez, 136 D.P.R. 284 (1994); In re Peña Clos, 135 D.P.R. 590, 601 (1994). De ordinario, se le exige que cuando tenga duda sobre lo expresado por el otorgante indague más allá de lo requerido comúnmente. Véase, In re Peña Clos, supra.

Luego de exponer el Derecho que antecede, pasemos a discutir si el querellado infringió las disposiciones de los Cánones 21, 35 y 38, supra.

III

En la querella se expuso lo siguiente referente a la imputación sobre violación al Canon 21, supra:

> Conforme a la documentación a que se ha hecho referencia en o antes del 5 de abril de 1991, el licenciado González Hernández advino en conocimiento de que el señor Medrano estaba casado desde el 21 de mayo de 1989 con la señora Alicea. Ello dado que, este presentó la demanda de divorcio por consentimiento mutuo de dicho matrimonio y se tiene que evidenciar en dicho proceso que las partes están debidamente casadas y la fecha del matrimonio. Habida cuenta que el letrado había fungido como notario en una transacción tan reciente como dos meses antes del divorcio, en donde el señor Medrano compareció como soltero […] este debió abstenerse de participar en dicho divorcio dado que como abogado tenía que representar y proteger los intereses de ambas personas y el hecho descrito podía crear un conflicto entre los intereses de las partes. […] Es altamente preocupante que las estipulaciones del caso de divorcio guarden silencio sobre la propiedad envuelta en dicho documento público.

De las alegaciones de la querella se desprende que se le imputa al licenciado González haber representado simultáneamente los intereses adversos del señor Medrano y de la señora Alicea. Claramente, no puede existir un conflicto de intereses fundamentado en la función notarial que el querellado ejerció cuando autorizó la Escritura Núm. 16 en febrero de 1991, pues en ese contexto el señor Medrano no fue su cliente.

Por su parte, el querellado alegó desconocer para febrero de 1991 que el señor Medrano en realidad estaba casado. A pesar de que el quejoso alegó en su queja que el querellado conocía ese dato, en la vista evidenciaria que

se celebró ante el Comisionado Especial no se presentó evidencia alguna sobre ese conocimiento.[15] Por lo tanto, partimos del hecho de que cuando el querellado autorizó la Escritura Núm. 16, desconocía la falsedad de lo declarado por el señor Medrano en cuanto a su estado civil para ese entonces.

Sin duda alguna, el hecho de que el señor Medrano haya comparecido como soltero dos meses antes de su divorcio, a comprar un bien inmueble, es una situación altamente preocupante. Como bien sabemos, los bienes adquiridos durante el matrimonio sometido al régimen de la sociedad legal de gananciales se presumen gananciales. Véase Art. 1301 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3641. En este caso el señor Medrano indicó en su queja que las estipulaciones que se sometieron con la petición de divorcio eran falsas porque no se incluyó un bien ganancial, refiriéndose al inmueble que había adquirido mediante la Escritura Núm. 16. No obstante, cabe señalar que no se presentó prueba en este proceso disciplinario que arrojara luz en cuanto si a la fecha del divorcio el querellado conocía que existían bienes gananciales

---

[15] Sabemos que para imponer sanciones disciplinarias se debe presentar prueba clara, robusta y convincente respecto a las violaciones éticas. *In re* Caratini Alvarado, 153 D.P.R. 575, 585 (2001). En ese sentido, sabemos que las determinaciones de hecho del Comisionado Especial, merecen deferencia. No obstante, al igual que en el caso de los jueces de instancia y los oficiales examinadores, esa regla de deferencia se aplica exclusivamente a la prueba testifical que se haya presentado, ya que es éste quien observa la actitud de los testigos, su forma de declarar, sus gestos y, en general, su conducta al prestar declaración. *In re* Ortiz Brunet, 152 D.P.R. 542, 549 (2000). No obstante, cuando estamos ante prueba documental, este Tribunal está en igual posición para hacer sus propias determinaciones.

adicionales a los que se mencionaron en las estipulaciones.[16] Además, los esposos Medrano-Alicea avalaron ese acuerdo ante el tribunal en la vista que se celebró a esos efectos.[17] Por lo tanto, no podemos concluir que el querellado haya representado intereses adversos. Sin embargo, la situación anómala aquí reseñada debió crear dudas en el querellado en cuanto a la apariencia que pudiera dar su participación como abogado –simultáneamente- de los esposos Medrano-Alicea. Veamos.

En In re Orlando Roura, 119 D.P.R. 1 (1987), mencionamos que un abogado puede representar lícitamente a unos cónyuges en una acción bajo la causal de consentimiento mutuo, siempre y cuando no surjan diferencias irreconciliables de criterio entre estos. No obstante, esa representación simultánea contempla más bien la excepción y no la norma. Véanse, Náter v. Ramos, 162 D.P.R. 616 (2004); Guías para Uniformar el Procedimiento de Divorcio por Consentimiento Mutuo, pág. 18. Toda vez que el señor Medrano compareció como soltero ante el querellado dos meses antes del divorcio, y en vista de que en esa petición de divorcio se consignó que este estaba casado desde 1989, lo más prudente era que el licenciado González Hernández se abstuviera de representarlo legalmente en esa gestión. Al no hacerlo, no evitó la apariencia de conducta impropia, infringiendo así los postulados del Canon 38, supra.

---

[16] Véase, Estipulaciones, Contestación a la querella, Anejo III.
[17] Véase, Minuta de la vista del 19 de abril de 1991, Íd., Anejo IV.

De otra parte, mediante la Escritura Núm. 111 de 30 de agosto de 1991, el señor Medrano vendió la propiedad que había adquirido en la Escritura Núm. 16. La querella expone que el querellado infringió los Canones 35 y 38, supra, al fungir como notario en ese otorgamiento. A juicio de la Procuradora:

> Ello debido a que, cuando fungió como abogado de los ex esposos Medrano-Alicea en el caso de divorcio por consentimiento mutuo [….] éste advino en conocimiento de que el señor Medrano estaba casado para la fecha en que adquirió la propiedad que estaba vendiendo, Escritura Núm. 16 de 5 de febrero de 1991. Dicho conocimiento debió crear dudas al notario de si la propiedad era o no un bien ganancial (se presume ganancial por haber sido adquirida durante el matrimonio). Por ello, debió abstenerse de fungir como notario en dicha transacción dado que su participación en la misma creaba dudas sobre su imparcialidad y honradez, incurriendo en una conducta impropia o una apariencia de conducta.
>
> Es obligación y responsabilidad ineludible de un notario el suplir información exacta y completa en los documentos y transacciones que autoriza y se realizan ante él, también es responsable de realizar todas las advertencias que sean pertinentes y necesarias respecto a la transacción en la que comparece como notario. En dicha escritura no se realizó advertencia sobre esta situación altamente preocupante y anómala.

Por su parte, el querellado alegó en su contestación a la querella que ni antes, durante, ni después del divorcio recordó que el señor Medrano había comparecido ante él como soltero en febrero de 1991. Como mencionamos previamente, el notario debe hacer averiguaciones mínimas para asegurarse de que la transacción que autoriza es veraz, legal y válida. También, mencionamos que cuando tenga dudas o sospechas sobre una situación particular, debe

indagar más allá de lo requerido comúnmente. En cuanto a esto, conviene que repasemos lo ocurrido en *In re* Vera Vélez, 136 D.P.R. 284 (1994). En esa controversia el licenciado Vera Vélez otorgó una escritura en la que la Sra. María Martínez le vendió al señor Díaz Ríos una finca. Allí compareció el señor Díaz Ríos como soltero a pesar de estar casado con la Sra. Marta V. Díaz Figueroa. **Seis meses antes** los esposos Díaz-Ríos habían otorgado otra escritura ante el licenciado Vera compareciendo ambos cónyuges como casados, pero este alegó no recordarlo dado al tiempo transcurrido y por tratarse de una transacción sencilla que resultaba ser de poca trascendencia. Concluimos en ese caso que:

> El hecho de que el señor Díaz le hubiese mentido al querellado en cuanto a su *status* civil es un factor a considerar al momento de determinar la sanción disciplinaria adecuada pero, de ordinario, no exime al notario de llevar a cabo las indagaciones debidas en casos como el que está ahora ante nos, en el cual una parte que va a otorgar una escritura ante un notario comparece como soltero, cuando anteriormente había comparecido ante el mismo notario como casado. **Nuestra jurisprudencia claramente requiere mayor cuidado de parte de los notarios en casos como el de marras en que, aun cuando el notario haya actuado sin tener conocimiento de que certificaba como verdadero un hecho falso,** *lo debió haber sabido.* En *In re Peña Clos*, supra, tuvimos la oportunidad de examinar unos hechos similares. En aquella ocasión se investigó la actuación de un notario que consignó en dos (2) escrituras en las cuales comparecía una pareja como casada, cuando en realidad ya no lo estaba, y había sido el propio notario querellado quien había sido su abogado durante su proceso de divorcio seis (6) años antes. En el caso ahora ante nos ciertamente existía el mismo deber de indagar, especialmente cuando el querellado había autorizado una escritura en la que comparecían los otorgantes como casados, apenas seis (6) meses antes de

autorizar la escritura en la que aparece uno de ellos como soltero. **La veracidad de los hechos en el caso de marras era de fácil verificación, pues la escritura previamente otorgada por el querellado, que estaba bajo su propia custodia, tenía la información correcta sobre el _status_ civil del querellante.** (Énfasis suplido). Íd., págs.. 288-289.

Como relatamos, para la fecha en que se otorgó la Escritura Núm. 111 –agosto de 1991- el querellado había representado al señor Medrano y a su exesposa en el caso de divorcio por consentimiento mutuo. Como cuestión inicial, el letrado debió abstenerse de fungir como notario en esa transacción. A su vez, en esa escritura se expuso que el señor Medrano había adquirido el referido inmueble mediante la Escritura Núm. 16 que se había otorgado en febrero ante el mismo querellado. Por lo tanto, una "averiguación mínima" de los documentos bajo la custodia del querellado lo hubiesen llevado a la conclusión de que el inmueble adquirido mediante la Escritura Núm. 16 y posteriormente vendido mediante la Escritura Núm. 111, podría ser parte del acervo ganancial del extinto matrimonio Medrano-Alicea. Ante esta situación, el querellado faltó a su deber de suplir información exacta y completa en la transacción que autorizó mediante la Escritura Núm. 111. Al hacerlo, su conducta creó dudas sobre su imparcialidad y honradez en su función como notario y minó los postulados del Canon 35, <u>supra</u>. Más aun, debió abstenerse de intervenir como notario en ese negocio jurídico. Reiteradamente hemos sostenido que la apariencia de conducta impropia tiene un efecto dañino sobre la confianza de la ciudadanía en la profesión. _In re_

<u>Nazario Díaz</u>, 174 D.P.R. 99 (2008). De esta forma, infringió el Canon 38, <u>supra</u>,[18] que le exige a todo letrado evitar hasta la apariencia de conducta impropia.

Recordemos que al determinar la sanción disciplinaria a imponerse a un abogado hay que considerar su reputación en la comunidad, el historial previo de sanciones disciplinarias, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, el resarcimiento al cliente y cualesquiera otras circunstancias atenuantes o agravantes que medien de acuerdo con los hechos. *In re* <u>García Ortiz</u>, 187 D.P.R. 507, 522 (2013). Como mencionamos en <u>In re Vera Vélez</u>, supra, el hecho de que un otorgante de una escritura le hubiese mentido al notario en cuanto a su estado *civil* es un factor a considerar al determinar la sanción disciplinaria adecuada, aunque de ordinario, no exime al letrado de llevar a cabo las indagaciones debidas. Tomando en consideración además que no surge de la querella ni del Informe del Comisionado que el negocio jurídico que autorizó el querellado mediante la Escritura Núm. 111 haya sido impugnado, nos limitaremos a amonestarlo por no esforzarse en evitar hasta la apariencia de conducta

---

[18] En cuanto al referido Canon 38, en *In re* <u>Avilés, Tosado</u>, supra, pág. 892, expresamos que la apariencia de conducta impropia tiene que sostenerse sobre la impresión que se le da al público de la violación efectiva de alguno de los cánones del Código de Ética Profesional o de la Ley Notarial de Puerto Rico. No obstante, en *In re* <u>Gordon Menéndez I</u>, 171 D.P.R. 210 (2007), resolvimos que el Canon 38, supra, opera *ex proprio vigore*, modificando y revocando cualquier expresión nuestra anterior en contrario. En ese mismo caso aclaramos que "cuando un abogado actúa en violación del Canon 38, *supra*, amerita nuestra intervención disciplinaria".

impropia al ejercer sus funciones como notario. Debe recordarse que la apariencia de impropiedad puede ser muy lesiva al respeto que tiene la ciudadanía por sus instituciones de justicia y a la confianza que los clientes depositan en sus abogados. *In re* Colón Ramery, 133 D.P.R. 555 (1993).

IV

Por los fundamentos que anteceden, amonestamos al Lic. Orlando R. González Hernández y lo apercibimos a que en el futuro se abstenga de incurrir en conducta que lesione los estándares éticos de la profesión de la abogacía.

Se dictará sentencia de conformidad.

La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez no intervieron.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Orlando R. González Hernández

CP-2012-0005

SENTENCIA

En San Juan, Puerto Rico, a 28 de enero de 2014.

Por fundamentos que anteceden, amonestamos al Lic. Orlando R. González Hernández y lo apercibimos a que en el futuro se abstenga de incurrir en conducta que lesione los estándares éticos de la profesión de la abogacía.
Notifíquese personalmente.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez no intervinieron.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo